# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AARON POWELL, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | Civil Action No. 12-10744-WGY |
| ) | |
| ANDREA CABRAL ) | |
| ) | |
| Respondent ) | |

## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR WRIT OF HABEAS CORPUS

This memorandum of law is submitted on behalf of Andrea Cabral ("Respondent") in opposition to the habeas corpus petition filed by Aaron Powell ("Petitioner"). Habeas relief should be denied for the reasons set forth below.

## PRIOR PROCEEDINGS

On August 21, 2008, the Roxbury Division of the Boston Municipal Court issued a criminal complaint against Petitioner, charging him with possession of a firearm without a firearm identification ("FID") card, in violation of Mass. Gen. Laws ch. 269, § 10(h); assault and battery of a police officer, in violation of Mass. Gen. Laws ch. 265, §13D; carrying a loaded firearm without a license, in violation of Mass. Gen. Laws ch. 269, § 10(n); resisting arrest, in violation of Mass. Gen. Laws ch. 268, § 32B; and carrying a firearm without a license, in violation of Mass. Gen. Laws ch. 269, § 10(a). S.A. 97-101.[1]

Petitioner was tried without a jury on January 30, 2009. (S.A. 103). Prior to trial, at the request of the Commonwealth, the trial court dismissed the charge of assault and battery on a

---

[1] Respondent's supplemental answer, filed on June 4, 2012, will be referred to as (S.A. --).

police officer. (S.A. 105). Justice Michael Coyne found Petitioner guilty of the remaining charges. (S.A. 103). Justice Coyne sentenced Petitioner to eighteen months in the house of correction for the conviction for carrying a firearm without a license, a concurrent sentence of six months for the resisting arrest and possession of a firearm without an FID card convictions, and a consecutive three-year term of probation for the conviction for carrying a loaded firearm. (S.A.103-104).

Petitioner's appeal was entered in the Massachusetts Appeals Court on May 20, 2009. (S.A. 1). Petitioner raised four issues: (1) the seizure of Petitioner was unsupported by reasonable suspicion in violation of Article 14; (2) the Commonwealth presented insufficient evidence of resisting arrest; (3) the Commonwealth presented insufficient evidence of possession of an unlicensed firearm and thus, Petitioner's conviction violated the Fourteenth Amendment; and (4) Mass. Gen. Laws ch. 269, § 10 and Mass. Gen. Laws ch. 140, § 131 were unconstitutional per se and as applied because, under *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), they unduly restrict the right to bear arms and the right to self-defense, in violation of the Second and Fourteenth Amendments and Article One, and they violate the right to equal protection under the Fourteenth Amendment and Article One. (S.A. 8-9).

The Appeals Court heard oral argument on May 12, 2010. (S.A. 2). Subsequently, the Supreme Court issued its decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Petitioner and the Commonwealth each filed a supplemental memorandum of law addressing the *McDonald* decision. (S.A. 2). On August 24, 2010, the Massachusetts Supreme Judicial Court ("SJC") took the appeal *sua sponte*. (S.A. 4). The SJC issued a decision in the case on April 28, 2011. (S.A. 261-278). The SJC held that Petitioner's convictions for unlawful possession of a firearm did not violate the Due Process Clause because, under Massachusetts state law, the

absence of a license is not an element of the crime, and therefore requiring Petitioner to show that he had a valid license or FID card does not create an unconstitutional presumption or shift to Petitioner the burden of proof on an essential element of the crime. (S.A. 273). The SJC also rejected Petitioner's claims that the Massachusetts firearms statutes violate the Second Amendment and equal protection guarantees because they prohibit eighteen to twenty year olds from possessing firearms. First, the SJC noted that the right secured by the Second Amendment is not unlimited and that this Court in *Heller* and *McDonald* did not ban all regulation of firearms. (S.A. 277-78). The SJC, however, held that because Petitioner did not contend that he had ever applied for an FID card or firearm license, and therefore could not show that he had been denied a card or license, he did not have standing to challenge the licensing statutes under either the Second Amendment or equal protection. (*Id.*).

Petitioner filed a petition for writ of certiorari in the United States Supreme Court on September 24, 2011. (S.A. 5). The Court denied certiorari on March 19, 2012. (S.A. 5, 279).

Petitioner filed a petition for a writ of habeas corpus on April 23, 2012. (Docket No. 1). Respondent filed an answer on May 30, 2012. (Docket Entry No. 10).

## STATEMENT OF FACTS

On habeas review, findings of fact made by a state court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends to factual determinations made by both state trial and appellate courts, *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002), as well as to any factual findings implicit in the state courts' rulings. *See Parke v. Raley*, 506 U.S. 20, 35 (1992). A habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000).

3

The SJC found the following facts with regard to the motion to suppress:

On August 20, 2008, at approximately 11 P.M., Boston police officer Manuel Blas and his partner, Scott Roby, were on routine patrol on Sonoma Street hearing toward Maple Street in the Roxbury section of Boston. The officers were in an unmarked Crown Victoria automobile with antennae on the back like those that appear on a marked police cruiser, and as such, are often recognized as an unmarked police cruiser. Officer Roby was driving: Officer Blas was seated in the front passenger seat. Both officers were dressed in plain clothes. Officer Blas wore a badge that identified him as a Boston police officer on a chain around his neck. Officer Roby displayed a badge on his clothing. Officer Blas had responded to that area in the past for calls concerning 'shots fired,' disturbances, and gun-related offenses.

As the officers approached the intersection, they observed about twenty-five people who were separated into three groups. There were both men and women, and they appeared mainly to be teenagers with a couple of individuals appearing to be in their early twenties. One group was comprised of about ten individuals who were standing in the vicinity of 87 Maple Street, which was to the officers' right. The other two groups were across the street; one consisted of about five individuals and the other of approximately ten individuals.

Officer Roby was driving 'very slowly.' The windows in the vehicle were down. The officers did not activate any lights or sirens, and did nothing to indicate that they were police. The officers heard yelling between the two groups and saw individuals pointing at each other. It appeared to Officer Blas that an altercation was brewing. While driving between the groups, however, it became 'eerliy quiet.' Officer Blas noticed one young man, the [petitioner], standing apart from the groups on the 87 Maple Street side of the street.

The [petitioner] was not interacting with any other people, and looked away after he saw the officers. The [petitioner] then walked on the sidewalk toward he officers and through the group congregating at 87 Maple Street. As he started walking, the [petitioner's] right hand moved to his right hip, and his left hand moved to the center of his waist, as if he was grasping something, which, based on Officer Blas's experience and training, appeared to be a gun. Once the [petitioner] got past the group, he started to run.

Officer Blas got out of the vehicle and followed the [petitioner] up Sonoma Street. He saw that the [petitioner] was clutching something with his right hand on his right side, with his left hand positioned in the 'center right of his waist.' The [petitioner] ran to a driveway near a garage. Officer Blas observed that the [petitioner] was holding the handle of what Officer Blas believed to be a gun. As he ran, the [petitioner], using his right hand, pulled out a firearm, a .22 caliber revolver. Officer Blas held a flashlight in his left hand and drew his gun with his right hand, pointing it at the [petitioner]. Officer Blas twice yelled, 'Drop it.'

4

> The [petitioner] turned left and ran to a fence along the driveway. As he tried to climb the fence, the [petitioner] dropped the revolver to the ground. Unable to get over the fence, the [petitioner] ran between the fence and a vehicle parked in the driveway in the rear area of the garage. Officer Blas lost sight of the [petitioner] for a few seconds. The [petitioner] emerged from the left side of the driveway, charging at Officer Blas with his hands clutched in fists. Officer Blas moved to his side, and the [petitioner] ran into Officer Roby who had been trailing Officer Blas. The [petitioner] knocked Officer Roby's flashlight out of his hand. Officer Blas placed his gun in his holster and chased the [petitioner] down Sonoma Street. Officer Blas eventually caught up with the [petitioner] when he ran into two armed security guards who worked in the neighborhood. Officer Blas arrested the [petitioner]. Officer Roby secured the revolver dropped by the [petitioner], which police soon determined to be loaded.

(S.A. 268-269). Substantially similar evidence was presented at trial. See Statement of Facts as presented in the Commonwealth's brief. (S.A. 189-193).

## ARGUMENT

I. **STANDARD OF REVIEW.**

This Court's review of the habeas petition is governed by 28 U.S.C. § 2254, *as amended by* the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. No. 104-132, Title I, § 104, 110 Stat. 1218 (effective April 24, 1996). Under AEDPA, a federal court may not grant habeas relief with respect to a claim adjudicated on the merits in state court, unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The term "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In addition, state court findings of fact "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

5

Under AEDPA, the burden is on petitioner to show that the state court applied federal law in an "objectively unreasonable manner." *Williams*, 529 U.S. at 409-410. An incorrect decision is not necessarily an unreasonable one. *Hurtado v. Tucker*, 245 F.3d 7, 15-16 (1st Cir. 2001) (citing *Williams*, 529 U.S. at 410). Rather, "some increment of incorrectness beyond error is required." *McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvorado*, 541 U.S. 652, 664 (2004).

Petitioner urges this Court to bypass the review required by § 2254 and review the claims *de novo* because the SJC did not sufficiently address the constitutional claims presented. The Supreme Court, however, has recently held that when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Harrington v. Richter*, 131 S.Ct. 770, 784-785 (2011); *see also Lyons v. Brady*, 666 F.3d 51, 54 (1st Cir. 2012) (AEDPA deference appropriate even though the SJC did not elaborate on its reasoning for rejecting petitioner's due process claim). In fact, a state court need not cite or even be aware of relevant Supreme Court cases for § 2254 to apply. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). Therefore, where the SJC decided the merits of Petitioner's constitutional claims, AEDPA deference should apply.

II. **THE SJC'S DECISION THAT THE STATE MAY DEFINE THE ELEMENTS AND AFFIRMATIVE DEFENSES OF STATE CRIMINAL LAW AND DID NOT ASSIGN TO PETITION THE ULTIMATE BURDEN OF PROOF ON LICENSE POSSESSION WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, SUPREME COURT PRECEDENT.**

Mass. Gen. Laws ch. 278, § 7, provides that "[a] defendant in a criminal prosecution, relying for his justification upon a license … shall prove the same; and until so proved, the presumption shall be that he is not so authorized." On habeas review, Petitioner argues that Mass. Gen. Laws ch. 278, § 7, violates the Due Process Clause because it "creates a mandatory presumption which burdens a defendant to 'prove the [existence of a license]; and, until so proved, the presumption shall be that he is not so authorized.'" (P. Br. 13). Petitioner's argument, however, is based on an incorrect premise that the Massachusetts statutory scheme shifts the burden of proof to the defendant with respect to an essential element of the crime. Because the Supreme Court traditionally defers to the states to define the elements of crimes and to allocate the burden of proof of an affirmative defense to a defendant, the SJC's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

In rejecting Petitioner's Due Process claim, the Appeals Court noted that it has "repeatedly … held that in prosecutions under [Mass. Gen. Laws ch. 269, 10(a) and (h)], the Commonwealth does not need to present evidence to show that [Petitioner] did not have a license or FID card because the burden is on [Petitioner], under [Mass. Gen. Laws ch. 278, § 7] to come forward with such evidence." (S.A. 273). The burden that the Appeals Court imposed on Petitioner, however, was not to prove the elements of the firearms offense; rather, it related to proving the existence of an affirmative defense under Mass. Gen. Laws ch. 278, § 7. (*Id.*; *Commonwealth v. Jones*, 372 Mass. 403, 406, 361 N.E.2d 1308, 1310-1311 (1977)). The Appeals Court also rejected Petitioner's contention that the Massachusetts legislature recast an

7

element of the crime of unlicensed firearms possession as an affirmative defense, relying on *Jones* to explain that the "absence of a license is not 'an element of the crime,' as that phrase is commonly used." (S.A. 273). *Jones* further holds that, "[i]n the absence of evidence with respect to a license, no issue is presented with respect to licensing. In other words, the burden is on the defendant to come forward with evidence of the defense. If such evidence is presented, however, the burden is on the prosecution to persuade the trier of facts beyond a reasonable doubt that the defense does not exist." *Id.*; s*ee also Commonwealth v. Davis*, 359 Mass. 758, 758, 270 N.E.2d 925, 926 (1971) (holding Mass. Gen. Laws ch. 269, § 10, which regulates the possession of firearms, "proscribes certain inherently dangerous acts" and Mass. Gen. Laws ch. 278, § 7, "allows the defendant to show that his conduct is within an exception to the proscription"). The Appeals Court declined to revisit the SJC's conclusion in *Jones* that, where Mass. Gen. Laws ch. 278, § 7, did not shift to the defendant the burden of proof on an element of the crime, it did not create an unconstitutional presumption under the Due Process Clause. (S.A. 273; *Jones*, 372 Mass. at 409-410, 361 N.E.2d at 1312).

The Supreme Court has found it constitutionally permissible for a state to place the burden of production of an affirmative defense, such as the affirmative defense established by Mass. Gen. Laws ch. 278, § 7, in unlicensed firearms possession cases, upon a defendant. *See Martin v. Ohio*, 480 U.S. 228 (1987) (affirming that Constitution is not offended by state requirement that defendant prove affirmative defense, applying holding of *Patterson v. New York*, 432 U.S. 197 (1977)). In *Patterson*, the defendant, who had been convicted of second-degree murder, challenged a New York statute that placed on him the burden of proving by a preponderance of the evidence the affirmative defense of acting under the influence of extreme emotional distress in order to reduce the crime to manslaughter. The Court "decline[d] to adopt

8

as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Id*. at 210. "Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch." *Id.* Accordingly, the Court held that it would "not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here." *Id. See also Gilmore v. Taylor,* 508 U.S. 333, 341 (1993) (affirming rule that states may place on defendants the burden of proving affirmative defenses).

The Supreme Court, in fact, has traditionally emphasized "the preeminent role of the States in preventing and dealing with crime and the reluctance of the Court to disturb a State's decision with respect to the definition of criminal conduct and the procedures by which the criminal laws are to be enforced in the courts, including the burden of producing evidence and allocating the burden of persuasion." *Martin*, 480 U.S. at 232, citing *Patterson*, 432 U.S. at 201-202 (Court should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual states). Instead, the Court has recognized instances, like the present case, where there is "a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to everyone who is unable to bring himself within the range of an exception," as justifying the transfer of the burden of an affirmative defense. *Morrison v. People of State of California,* 291 U.S. 82, 91 (1934).

Although the Court recognized that "[t]he list is not exhaustive[, and] [o]ther instances may have arisen or may develop in the future," it noted that "[i]nstances of the application of this principle can be cited in profusion." *Id*. at 91 n.4.[2]

Because the Supreme Court allows states to place on defendants the burden of proving affirmative defenses, the Appeals Court's decision rejecting Petitioner's Due Process claim does not violate AEDPA. The Appeals Court's recognition that Mass. Gen. Laws ch. 278, § 7, does not violate the Due Process Clause by requiring a defendant to prove the existence of a license in an unlicensed firearms possession case is not contrary to, or an unreasonable application of, *Martin* and its progeny, and Petitioner's habeas claim must be denied.

### III. THE SJC'S DECISION THAT TRIAL COUNSEL WAS NOT INEFFECTIVE IN FAILING TO FILE A MOTION TO SUPPRESS PETITIONER'S STATEMENT TO A POLICE OFFICER WHILE IN CUSTODY WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT PRECEDENT.

Officer Blas testified at trial that he handcuffed Petitioner and questioned him without reading Petitioner his *Miranda* rights. (S.A. 273). In response to Officer Blas's questions, Petitioner stated that he did not have a firearm. *Id.* Trial counsel filed a motion to suppress certain physical evidence found at the scene, but failed to move to suppress Petitioner's statement to Officer Blas. (S.A. 268, 273).

In his direct appeal, Petitioner argued that trial counsel's failure to file a suppression motion regarding Petitioner's statement to Officer Blas constituted ineffective assistance of

---

[2] *Morrison* listed typical examples of the time to include: (1) where defendant, having game in his possession in violation of statute whereby possession was generally a crime, was held to have burden of proving special qualifications; (2) prosecution for bigamy, where, on proof that defendant had contracted a second marriage during lifetime of his first wife, burden was laid on him to prove exceptional circumstances that would have made marriage lawful; and (3) defendant subject to burden of producing license or permit for business or profession that would otherwise be illegal. *Id*.

counsel. (S.A. 273). Petitioner claimed if the statement had been suppressed, the Commonwealth could not have demonstrated his consciousness of guilt or met its burden of proof regarding the charge of possession of a firearm without a license. *Id.* The Appeals Court found the ineffective assistance claim meritless because "[e]ven if [Petitioner's] trial counsel had filed a motion to suppress that was allowed, the absence of the statement at [Petitioner's] trial did not likely deprive him of 'an otherwise available, substantial ground of defence ….'" *Id.* The Appeals Court noted that the Commonwealth was not required to prove that Petitioner did not have a firearms license and cited several examples from which the fact finder could have inferred consciousness of guilt. (S.A. 273-74). Petitioner raises the same claim now on habeas review. (Pet. Br. 17-19).

An ineffective assistance of counsel claim predicated on counsel's alleged failure to competently litigate a Fourth Amendment issue is governed by the standard established in *Kimmelman v. Morrison*, 477 U.S. 365 (1986). *See Barry v. Ficco*, 392 F.Supp.2d 83, 94-95 (D. Mass. 2005), *citing Kimmelman*, 477 U.S. at 374-375. As the Supreme Court stated:

> The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Id.* at 94, *quoting Kimmelman*, 477 U.S. at 374-375, *citing Strickland*, 466 U.S. at 686, 688. Accordingly on habeas review, "[w]here the claimed omission in ineffective representation is the failure to file a suppression motion, the inquiry involves dual assessments. '[T]he defendant

must show that the constitutional claim has merit and that there was a reasonable possibility that the verdict would have been different without the excludable evidence.'" *Barry*, 392 F. Supp.2d at 94-95, *quoting Commonwealth v. Anderson*, 58 Mass. App. Ct. 117, 127-128 (2003), *quoting Commonwealth v. Fletcher*, 52 Mass. App. Ct. 166, 169 (2001).

Assuming *arguendo* that trial counsel failed to file a motion to suppress that would have been successful, the Appeals Court reasonably concluded that "the absence of the statement at the [petitioner's] trial did not likely deprive him of 'an otherwise available, substantial ground of defence ….'" (S.A. 273) (internal citations omitted). Without Petitioner's statement to Officer Blas, the fact finder could have inferred consciousness of guilt from "testimony from both officers that they saw the [petitioner] holding a firearm" and also from "[Petitioner's] behavior of attempting to conceal a weapon from the officers as well as evading them while doing so." (S.A. 274). Nothing about the Appeals Court's decision demonstrates an "increment of incorrectness beyond error" that would warrant the extraordinary relief that habeas provides. *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002). Petitioner's claim, therefore, must fail because he cannot establish that the Appeals Courts' adjudication of his ineffective assistance claim was contrary to, or an unreasonable application of, *Kimmelman*.

IV. **PETITIONER'S CLAIMS THAT THE FIREARMS STATUTES VIOLATE THE SECOND AMENDMENT AND THE EQUAL PROTECTION CLAUSE ARE PROCEDURALLY DEFAULTED AND PETITIONER HAS FAILED TO SHOW CAUSE AND PREJUDICE TO EXCUSE THE DEFAULTS.**

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, 130 S.Ct. 612, 614-615 (2009), quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits."

*Walker v. Martin*, 131 S.Ct. 1120, 1127 -1128 (2011), *citing Wainwright v. Sykes,* 433 U.S. 72, 81-82 (1977). A state procedural rule is "adequate" if it is regularly or consistently applied by the state courts. *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), *citing Hathorn v. Lovorn*, 457 U.S. 255, 262-263 (1982). The rule is "independent" if it does not depend on a federal constitutional ruling. *Id., citing Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). The Court in *Coleman* affirmed that the doctrine may apply even where the state procedural default is offered as an "alternative" basis for a decision. *Coleman*, 501 U.S. at 733. The same may be said of the prior decisions on which *Coleman* relied. See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Michigan v. Long*, 463 U.S. 1032, 1041 (1983). As the *Harris* Court explained:

> [A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. . . . In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

489 U.S. at 264 n.10. In such a case, "[c]onsiderations of comity and federalism bar the federal court's review." *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997), *citing Lambrix v. Singletary*, 520 U.S. at 523-24.

In cases involving such a procedural default, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The jurisdictional nature of the independent and adequate state ground inquiry requires that it be addressed by this Court at the outset. *Lambrix v. Singletary,* 520 U.S. at 523.

In Massachusetts, [f]rom an early day it has been an established principle . . . that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel

13

the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government." *Kaplan v. Bowker,* 333 Mass. 455, 459, 131 N.E.2d 372 (1956)." "'Only one whose rights are impaired by a statute can raise the question of its constitutionality, and he can object to the statute only as applied to him.'" *Commonwealth v. Gordon,* 354 Mass. 722, 725, 242 N.E.2d 399 (1968), *quoting Massachusetts Commission Against Discrimination v. Colangelo,* 344 Mass. 387, 390, 182 N.E.2d 595 (1962), *citing United States v. Raines,* 362 U.S. 17, 21 (1960) ("one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional"). A licensing scheme, unless void on its face, imposes legal harm only on one who applies for a license and is unlawfully denied. *Gordon*, 354 Mass. at 725, 242 N.E.2d at 401.[3] Thus, the SJC's decision based on Petitioner's lack of standing to challenge these statutes because he did not apply for either a FID card or a license to carry constitutes an adequate state-law ground. The SJC's decision also constitutes an independent state-law ground because it clearly does not depend on a federal constitutional ruling.

Application of the foregoing principles to the instant case supports the Respondent's position. Here, Petitioner admits that he did not apply for an FID card or a license to carry. The SJC concluded that because of this fact, Petitioner may not challenge his convictions under either Mass. G.L. c. 269, § 10 (a) or § (h)(1). *Powell,* 459 Mass. at 589-591, 946 N.E.2d at 129-130.

---

[3] Petitioner claims that the SJC's decision that he lacked standing to challenge the FID card and firearm licensing statutes is eliminated by the doctrine of futility (Pet. Br. 23). However, as argued above, standing constitutes a procedural default and, in any event, Petitioner has not shown that applying for an FID card or a firearms license would have been futile. M.G.L. c. 140, § 129B allows for eighteen year olds to obtain an FID card. Moreover, Petitioner has not shown that he would have been denied a firearms license based on his age alone. *See Powell*, 459 Mass. at 590; 946 N.E.2d at 129-130.

14

Additionally, the alternative basis for the decision offered by the SJC – that the two Massachusetts firearm statutes at issue do not violate either the Second Amendment or the Equal Protection Clause because they do not prohibit all gun possession, as did the ordinances in *Heller* and *McDonald* – does not operate as a waiver of the underlying procedural default. *Burks*, 55 F.3d at 716, n. 2. Therefore, procedural default must be found to bar consideration of the issues here.

Furthermore, there is no basis to excuse application of the procedural default rule in Petitioner's case. "The default may be excused only if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or else demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice." *Glacken v. Dickhaut*, 585 F.3d 547, 551 (1st Cir. 2009), *citing Obershaw v. Lanman,* 453 F.3d 56, 68 (1st Cir. 2006). In this context, "cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule." *Burks,* 55 F.3d at 717 (citations omitted). Prejudice requires the petitioner to demonstrate "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *Ortiz v. DuBois,* 19 F.3d 708, 714 (1st Cir. 1994), *quoting Untied States v. Frady,* 456 U.S. 152, 170 (1982). The miscarriage-of-justice exception "is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks,* 55 F.3d at 717.

Here, Petitioner did not address the issue of procedural default in his memorandum in support of his petition and thus, does not claim that there was cause and prejudice to excuse the defaults, or that default would result in a miscarriage of justice. Additionally, Petitioner has not,

15

nor can he, show a fundamental miscarriage of justice in light of the overwhelming evidence against Petitioner as reiterated above, and because there is no merit to Petitioner's claims that these firearm statutes violate the Second Amendment or the Equal Protection Clause. As the SJC noted,

> the defendant overlooks that the right secured by the Second Amendment is not unlimited. Both *Heller* and *McDonald* make that point clear. See *McDonald, supra* at 3047; *Heller, supra* at 626, 128 S.Ct. 2783. The Court also emphasized in those decisions that the Second Amendment does not ban all regulation of firearms. See *McDonald, supra; Heller, supra* at 626–627, 128 S.Ct. 2783. Rather, the Court only went so far as to say that the Second Amendment right to keep and bear arms was infringed on when legislation effectuated a total ban of handgun possession, or prevented the use of an operable firearm, in the home. *Heller, supra* at 629–630, 128 S.Ct. 2783.

*Powell*, 459 Mass. at 589, 946 N.E.2d at 129. Regarding Petitioner's Equal Protection claim, the SJC noted "that *Heller* stands for the proposition that some categorical bans on firearm possession or use are constitutional, including regulations concerning who may possess a right to keep and bear arms." *Id.* at 590-591, 946 N.E.2d at 130. *See Glacken*, 585 F.3d at 551 (petitioner's claim was procedurally defaulted and court did not consider merits of the claim where petitioner did not address the default issue and thus, failed to show cause and prejudice or that the default would result in a miscarriage of justice); *Burks*, 55 F.3d at 718, *citing Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). Thus, Petitioner cannot overcome the procedural default bar to habeas review of these claims.

## CONCLUSION

For the above stated reasons, this petition for a writ of habeas corpus should be denied.

Respectfully submitted,

MARTHA COAKLEY
Attorney General

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2832

Dated: August 31, 2012                   BBO # 561669

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including Kathryn Barnwell, counsel for the petitioner in this matter. There are no non-registered participants involved in this case.

/s/ Susanne G. Reardon
Susanne G. Reardon